UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:12-CR-135-DBH |
| ) | |
| HASAN WORTHY, ) | |
| ) | |
| DEFENDANT ) | |

### DECISION AND ORDER ON DEFENDANT WORTHY'S APPEAL FROM INTERIM AND PERMANENT ORDERS OF DETENTION AND OBJECTION TO RECOMMENDED DECISION DENYING MOTION FOR RELEASE

#### INTRODUCTION

The defendant Hasan Worthy has appealed a detention order and has objected to Magistrate Judge Rich's recommended decision on his motion to dismiss and for immediate release.[1] Def. Worthy's Appeal from Interim and Permanent Orders of Detention and Obj. to Recommended Dec. Denying Mot. for Release, 02:12-cr-135-DBH (ECF No. 30) The question presented is whether Worthy can be detained pending trial where I previously dismissed

---

[1] In his appeal/objection, Worthy does not address dismissal, only the decision to deny him immediate release. Worthy never made a case for dismissal, even admitting in his original filing that the statute does not allow dismissal. Def.'s Supplemental Mem. in Opp'n to Mot. for Detention & Mem. in Support of Mot. to Dismiss and Mot. to Release at 12 n.5, 02:12-cr-135-DBH (ECF No. 11) ("Def.'s Supplemental Mem.") He suggests in his objection that he filed his motion as a motion to dismiss because the Magistrate Judge had suggested that was the proper way to raise the issue. Def.'s Appeal from Interim and Permanent Orders of Detention and Objection to Recommended Dec. Denying Mot. for Release at 10, 02:10-cr-136-DBH (ECF No. 30) ("Def.'s Appeal & Objection"). Since ultimately the Magistrate Judge denied release and did not address dismissal, perhaps his decision did not need to be a recommended decision, but the distinction does not matter here. The issue is purely legal, involving the interpretation of a federal statute and caselaw, and I review the legal issues de novo.

charges against him without prejudice because of a Speedy Trial Act violation, the government then reindicted him on essentially the same charges, and he has been continuously detained for more than 90 days. The issue requires interpretation of an infrequently cited section of the Speedy Trial Act. After oral argument on August 24, 2012, where I set a trial date of September 10, 2012, I conclude that Worthy is entitled to release, albeit conditions can be imposed.

Federal criminal law practitioners know that, subject to enumerated exceptions, section 3161 of Title 18, United States Code, requires that a trial commence within 70 days of an indictment or the defendant's appearance in court, whichever is later. What is less well known is that, subject to the identical list of exceptions, section 3164 requires that a trial commence within 90 days of the start of continuous detention when the defendant is detained solely because he is awaiting trial.[2] A violation of the 70-day clock results in

---

[2] 18 U.S.C. § 3164 provides:
> (a) The trial or other disposition of cases involving—(1) a detained person who is being held in detention solely because he is awaiting trial, and (2) a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk, shall be accorded priority.
> (b) The trial of any person described in subsection (a)(1) or (a)(2) of this section shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.
> (c) Failure to commence trial of a detainee as specified in subsection (b), through no fault of the accused or his counsel, or failure to commence trial of a designated releasee as specified in subsection (b), through no fault of the attorney for the Government, shall result in the automatic review by the court of the conditions of release. No detainee, as defined in subsection (a), shall be held in custody pending trial after the expiration of such ninety-day period required for the commencement of his trial. A designated releasee, as defined in subsection (a), who is

*(continued next page)*

dismissal of the indictment, with or without prejudice. 18 U.S.C. § 3162(a)(2). A violation of the 90-day clock results not in dismissal, but in pretrial release of the defendant: "No detainee [held solely because he is awaiting trial] shall be held in custody pending trial after the expiration of such ninety-day period required for the commencement of his trial." 18 U.S.C. § 3164(c).[3]

When the Speedy Trial Act first was enacted, the 90-day clock was part of the gradual phase-in of the time-limiting requirements (on the way down to 70 days), and it applied only from 1975 to 1979. United States v. Krohn, 560 F.2d 293, 294 (7th Cir. 1977); United States v. Krohn, 558 F.2d 390, 393 (8th Cir. 1977). There are a few cases from that interim period interpreting the 90-day provision,[4] but mostly they are of little help. Congress made the 90-day clock permanent in 1979 and resolved a disagreement among the courts over

---

found by the court to have intentionally delayed the trial of his case shall be subject to an order of the court modifying his nonfinancial conditions of release under this title to insure that he shall appear at trial as required.

[3] United States v. Krohn, 560 F.2d 293, 295 (7th Cir. 197) (dismissal not available). The legislative history also shows that dismissal was rejected as a remedy, at least when section 3164 was in its transitional phase. See S. Rep. No. 93-1021, at 44-45 (1974) ("Section 3164 has been added to title I of the legislation as a result of the suggestion by Professor Freed that certain minimal speedy trial requirements be placed into operation soon after enactment and until the courts are prepared to implement the mandatory time limits. These interim plans would be similar to the plan adopted by the United States Court of Appeals for the Second Circuit. (See Section IV. Discussion, pp. 17-20.) The section would require trials within 90 days for pretrial detainees or "high risk" defendants who are on pretrial release, pending the full effectiveness of sections 3161 and 3162. The sanctions for failure to adhere to the limits would not be dismissal, as in section 3162, but pretrial release in the case of detainees and review of release conditions in the case of high risk reIeasees. The provision would not apply to detainees who have already been convicted of another offense because independent grounds for their detention exist.") The defendant recognizes the unavailability of dismissal in his legal memorandum. Def.'s Supplemental Mem. at 12 n.5 (ECF No. 11).

[4] Those cases concern whether there are any exceptions to the 90-day clock. See, e.g., United States v. Krohn, 558 F.2d 390, 393 (8th Cir. 1977); United States v. Tirasso, 532 F.2d 1298, 1300 (9th Cir. 1976). The 1979 amendment explicitly made the 70-day-clock exceptions applicable to section 3164. Section 3164(b) now specifies: "The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section."

whether the excludable times for section 3161 are applicable to section 3164 (they are). 18 U.S.C. § 3164(b). There are few cases since section 3164 became permanent, because the (usually) shorter 70-day clock now applies to all cases and is generally the focus of any controversy.

**FACTUAL BACKGROUND**

The defendant Hasan Worthy was scheduled for imminent jury empanelment in <u>United States v. Worthy</u>, 02:10-cr-136-DBH on July 2, 2012, when—five days earlier—on June 27, 2012, he filed a motion to dismiss the Fourth Superseding Indictment for violation of the 70-day clock under section 3161. He had previously filed three other motions seeking to dismiss all or part of that Indictment, as well as two motions to suppress.[5] But June 27, 2012, was the first time that Worthy raised the 70-day clock issue. Even then, Worthy did not move for release under section 3164. I requested a conference of counsel, and it was scheduled for July 16, 2012. Jury empanelment went forward as scheduled on July 2.

In preparation for the conference of counsel, I alerted counsel to pertinent cases I had uncovered on the 3161 motion. I said at the conference that I thought it was a serious issue and permitted further briefing and oral

---

[5] The motions to dismiss are as follows: Def. Worthy's Mot. to Dismiss Count One of the Fourth Superseding Indictment, 02:10-cr-136-DBH (ECF No. 524); Def. Worthy's Mot. to Dismiss the Fourth Superseding Indictment as Untimely, 02:10-cr-136-DBH (ECF No. 528); Def. Worthy's Mot. to Suppress or Exclude Evidence and to Dismiss Fourth Superseding Indictment, 02:10-cr-136-DBH (ECF No. 585). The motions to suppress are as follows: Def. Worthy's Mot. to Suppress Wire Intercepts, 02:10-cr-136-DBH (ECF No. 527); Def. Worthy's Mot. to Suppress or Exclude Evidence and to Dismiss Fourth Superseding Indictment, 02:10-cr-136-DBH (ECF No. 585).

4

argument. Worthy then filed on July 18, 2012, a motion for release that raised for the first time the applicability of section 3164's 90-day clock.[6]

At oral argument on July 27, 2012, on the motion to dismiss, the government stipulated that there had been a section 3161 violation. I did not immediately accept the stipulation because it was unexpected (until then, the government had been vigorously resisting the 70-day clock motion), and I needed to assess how much of the delay was unjustifiable in determining whether dismissal would be with or without prejudice. In less than a week, on August 1, 2012, I granted Worthy's motion to dismiss under section 3161, but without prejudice, and referred to the Speedy Trial Act calculations. Dec. and Order on Def.'s Mot. to Dismiss Fourth Superseding Indictment for Violation of Speedy Trial Rights, 02:10-cr-136-DBH (ECF No. 653). In doing so, I concluded that there had been a significant period beyond the 70-day limit that was not justified by co-defendants' delays. Because I dismissed the case, I considered Worthy's motion for release moot. In my absence on August 2, 2012, my colleague Judge Singal signed an Order of Discharge as to Worthy in the case that I had dismissed.

In the meantime, however, the government filed a new criminal complaint (later supplanted by an Indictment under the current docket number) concerning essentially the same charges as had been dismissed. The

---

[6] The motion had a collection of arguments for release: section 3164, the Bail Reform Act (on the premise that I would grant the motion to dismiss for a section 3161 70-day violation), the Fourth Amendment, the due process clause of the Fourteenth Amendment, and the bail provisions of the Eighth Amendment. Def.'s Mot. for Release from Detention, 2:10-cr-136-DBH (ECF No. 640).

government obtained a new arrest warrant on July 27, 2012. On August 2, 2012, Worthy was "arrested" following the Order of Discharge in the earlier case. In reality, Worthy never left custody. On August 2, the government also moved for detention on the new complaint, proceeding under the Bail Reform Act, 18 U.S.C. § 3142. Worthy both resisted the motion for detention and moved once again for immediate release under section 3164. Mot. to Dismiss and for Immediate Release, 02:12-cr-135-DBH (ECF No. 12).

On August 7, a new Indictment was returned and filed in this case. Indictment, 02:12-cr-135-DBH (ECF No. 14). On the same date, Magistrate Judge Rich arraigned Worthy and conducted an evidentiary hearing on the motions for detention and release. After the hearing, the Magistrate Judge ordered Worthy's detention and recommended denying his motion for release. Report and Recommendation, 02:12-cr-135-DBH (ECF No. 27).

On August 9, the government moved to have discovery and motion deadlines shortened so that the case could be tried in September (since the case had been ready for trial in July). Gov't Mot. to Schedule Trial to Commence on September 10, 2012, 02:12-cr-135-DBH (ECF No. 24). Worthy has appealed his ongoing detention and resisted the government's motion to expedite proceedings.

# ANALYSIS[7]

There is no question that a new 70-day clock started when the new Indictment was filed against Worthy on August 7, 2012. Section 3161(d)(1) states: "If any indictment . . . is dismissed upon motion of the defendant, . . . and thereafter . . . an . . . indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provision[ ] of subsection[ ] . . . (c) [the 70-day clock] shall be applicable with respect to such subsequent . . . indictment . . . ." See United States v. Barnes, 251 F.3d 251, 255-56 (1st Cir. 2001) (dismissal without prejudice under the Speedy Trial Act forces the government to obtain a new indictment if it chooses to reprosecute, and for Speedy Trial Act purposes it is "a first trial on a new indictment"). But the Speedy Trial Act is silent on whether a new 90-day clock starts as well.[8] Since Worthy moved for dismissal under section 3161 and succeeded in that motion, and since the statute allows the government then to reinitiate criminal proceedings with a new 70-day clock, there is some logic in starting both clocks again. A contrary ruling certainly adds complexity to the Speedy Trial Act calculations in having to monitor two different clocks with somewhat different

---

[7] I agree with the Magistrate Judge that judicial estoppel does not arise from the government's statements in 2:10-cr-136-DBH, and that nothing I said in my Order of Dismissal in that docket resolves the issue here. Report and Recommendation at 9, 02:12-cr-135-DBH (ECF No. 27).

[8] While subsection (d)(1) is silent, both (d)(2)(proceeding after reinstatement on appeal) and (e)(proceeding after mistrial or order for a new trial) explicitly say that the sanctions of section 3162 apply, i.e., dismissal with or without prejudice, arguably an implication that in those instances section 3164's release sanction does not.

standards.[9]  But if the purpose of the 90-day clock is to set an outside limit for pretrial detention that is stricter than the 70-day clock criteria, then it is arguably improper to allow the government to continue detention—after the 90-day-clock has run—merely by filing a new complaint or indictment.

Neither the Supreme Court nor the First Circuit has addressed this issue. But the Ninth Circuit did address section 3164 in an opinion during the interim period of its effectiveness. United States v. Tirasso, 532 F.2d 1298 (9th Cir. 1976). In Tirasso, the court was confronted with two succeeding indictments in two different Districts. The court stated:

> While the offense charged in the Arizona indictment is of a substantially larger scope than that charged in the New York indictment, they are both based on many of the same operative facts, and they are not, therefore, completely discrete offenses for which separate ninety-day periods might be applicable.

Id. at 1300. The same reasoning applies here in determining whether a separate 90-day period applies to this new Indictment against Worthy. The new Indictment in 02:12-cr-135-DBH contains only minimal changes from the

---

[9] Some courts already have introduced additional complexity by suggesting that the standard for excluding "reasonable" delay occasioned by joinder of a co-defendant can be measured differently for the two clocks. United States v. Theron, 782 F.2d 1510, 1516 (10th Cir. 1986) ("To give effect to both statutes, we hold that the 'reasonable delay' exclusion of § 3161(h)(7) has a different meaning and application under § 3164 than under § 3161, because of the different context in which it arises."); United States v. Noriega, 746 F. Supp. 1548,1561 (S.D. Fl. 1990); United States v. Mendoza, 663 F. Supp. 1043, 1047 (D.N.J. 1987). The parties have not cited any case that addresses whether the single-clock rule of United States v. Barnes, 251 F.3d 251, 257 (1st Cir. 2001) ("the time line for the last defendant joined usually becomes the time line for all defendants"), applies to the 90-day clock calculations, which begin with a different event (detention) than do the 70-day clock calculations. The single-clock rule derives from a single sentence in a footnote of a Supreme Court opinion, Henderson v. United States, 476 U.S. 321, 323 n.2 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant. See 18 U.S.C. § 3161(h)(7)."). That same opinion recognized in text that section 3161(h)(7) is the only exclusion that is limited to a "reasonable" period of delay. All the others exclude "any period of delay." Id. at 327.

Fourth Superseding Indictment that I dismissed without prejudice in 02:10-cr-136-DBH.[10] Following Tirasso, I conclude that the new Indictment does not start a new 90-day clock. In Tirasso, Judge—now Justice—Kennedy wrote for the Ninth Circuit:

> The language of section 3164 is straightforward. We find no ambiguity in its interpretation. Subsection (b) provides that the trial of persons held in custody solely because they are awaiting trial must commence within ninety days following the beginning of such continuous detention. Subsection (c) provides that the failure to commence trial within the ninety day period, where such failure is not occasioned by the fault of the accused or his counsel, must result in an automatic review by the court of the conditions of release, and further that "no detainee . . . shall be held in custody pending trial after the expiration of such ninety-day period. . . ." Under the clear language of the statute the reason for delay is irrelevant, so long as it is not occasioned by the accused or his counsel.
> The legislative history, moreover, makes it clear that release of the defendant from custody, and nothing less, is the sanction for delay beyond the ninety-day period. "Failure to commence the trial of a detained person under this section results in the automatic review of the terms of release by the court and, in the case of a person already under detention, release from custody."

Id. at 1299-1300 (citations to legislative history materials omitted). The Tirasso court was not happy with the outcome that the 90-day clock required:

> We are fully aware of the dangers inherent in today's decision. The charges against these defendants are serious. . . . [T]he United States has the greatest interest in bringing these individuals to justice.
> Release of these two foreign nationals from custody is tantamount to an invitation to flee across the Mexican border, less than 3 hours away. The district court, in

---

[10] The differences between the Fourth Superseding Indictment in 02:10-cr-136-DBH and the new Indictment in 02:12-cr-135-DBH are as follows: in Count One (Conspiracy to distribute and possess with the intent to distribute), the new charge adds conspiracy to distribute, Daneek Miller is no longer a named defendant, the time of the conspiracy has decreased by one month, the quantity of cocaine has been added, and the reference to heroin has been dropped. There is no change in Count Two, Three (previously Four), or Four (previously Five).

9

> denying appellants' motion for release, noted that there was virtually no way to assure the appearance for trial of a foreign national once he is set free in the District of Arizona. Defense counsel all but admitted that appellants, once released, could not be counted upon to appear. We have no doubt of the correctness of this proposition.
>    In light of these facts, the wisdom of the result Congress has decreed is questionable. . . . But this result is the only one open to us under the plain terms of the statute.

Id. at 1300-01.

Despite this obvious plea, Congress made section 3164 permanent in 1979, and altered it only to make explicit that the exclusions listed for the 70-day clock apply to the 90-day clock as well.[11] Pub. L. 96-43, § 7 (August 2, 1979). The other "straightforward" and "plain terms of the statute" remained unchanged. The government has cited a case, United States v. Mendoza, 663 F. Supp. 1043 (D.N.J. 1987), that, it suggests, calls for examination of a number of factors (those in section 3142 of the Bail Reform Act, the length of non-excludable delays, whether any party caused unnecessary delay, or whether a party failed to take action to prevent delay) in deciding whether to apply section 3164's release requirement. Gov't's Response to Def.'s Claim for Release Under Sec. 3164 of the Speedy Trial Act at 3, 02:12-cr-135-DBH (ECF No. 13). But the Mendoza court concluded that the 90-day clock had *not* run,

---

[11] Tirasso found that no exclusions were available from the 90-day limit under section 3164. Tirasso, 532 F.2d at 1300, n.1. That part of Tirasso was overruled by the 1979 amendments. I have already concluded that despite those exclusions the 70-day clock ran out in February. The 90-day clock certainly ran out no later than March, and arguably ran out in February if we count the 22 days consumed on Worthy's individual Speedy Trial Act clock starting with his arrest and ending with application of the single-clock rule when the last co-defendant was arraigned. See Decision and Order on Def.'s Mot. to Dismiss Fourth Superseding Indictment for Violation of Speedy Trial Rights at 5-8, 02:10-cr-136-DBH (ECF No. 653) (providing speedy trial calculations).

and was addressing only whether constitutional principles required relief where the Speedy Trial Act did not. No case has suggested any basis for finding flexibility in the relief required by section 3164 once a violation has occurred.[12]

I find <u>Tirasso</u> to be compelling authority, and find no persuasive authority to the contrary.[13] But like <u>Tirasso</u>, I am unhappy with the outcome that section 3164 requires. Here is why.

Worthy never raised the issue of his right to release under section 3164's 90-day clock until after a jury had been empanelled to try him; and he did not raise his 70-day argument until the very eve of jury empanelment. As I recounted in my Order of Dismissal, never did Worthy seek an early trial, and never did he move to sever his case so that he could proceed to trial.[14]

Moreover, as I ruled in granting the 70-day-clock motion to dismiss without prejudice, there was no bad faith by the government and, contrary to

---

[12] I disagree with the Magistrate Judge's reading of <u>Noriega</u> and <u>Mendoza</u> as supporting denial of Worthy's request for release under section 3164. The court in <u>Mendoza</u> concluded that the 90-day clock had *not* run, but was concerned about the length of pre-trial detention and proceeded to examine the constitutional due process issues. That analysis is not pertinent here, where it is undisputed that the 90-day clock has run. <u>Noriega</u> did examine a variety of factors in determining whether the delay caused by the joinder of a codefendant was "reasonable" under section 3161(h)(7)—again, pertinent to whether the clock had run—but I have already ruled in the 70-day clock order that the joinder of codefendants did not justify the delay in this case. In short, the 90-day clock has fully run, and the only question is what is the remedy.

[13] The government cites a Magistrate Judge's decision from another district that declined to follow <u>Tirasso</u>, although the decision cited no authority for the contrary position. <u>United States v. Wilcox</u>, 2007 WL 4570803 (E.D. Pa. 2007). The Magistrate Judge there found the outcome that <u>Tirasso</u> would produce to be "illogical and unfair," leading to "an absurd result," inconsistent with Congress's objectives, and "inconceivable" as the outcome Congress would want. <u>Id</u>. at *2-3. Although I agree with many of those sentiments, the statutory language is clear and, unlike <u>Wilcox</u>, I apply it.

[14] In the Sixth Amendment speedy trial context, the First Circuit has characterized a defendant's "eleventh hour" filing of a speedy trial motion as demonstrating a "lack of enthusiasm for the speedy trial right which he now asserts." <u>United States v. Munoz-Amado</u>, 182 F.3d 57, 62 (1st Cir. 1999). But the Speedy Trial Act, specifically section 3164, has no such reservation about eleventh-hour filings.

11

Worthy's protestations, the government was not the primary cause of delays.[15] Worthy himself previously caused trial delays by his motion filings. See Dec. and Order on Def.'s Mot. to Dismiss Fourth Superseding Indictment for Violation of Speedy Trial Rights at 22 n.23, 02:10-cr-136-DBH (ECF No. 653).[16] Worthy prevented his July trial from occurring by filing his June 27 motion to dismiss. Otherwise by now he would have been acquitted and released, or convicted and detained based upon his conviction.

Now in this new case, the government moved for an expedited motion and discovery deadline and for trial in September (since the case was already ready for trial in July). Once again, Worthy resisted. See Def.'s Response to Gov't Mot. to Schedule Trial to Commence on September 10, 2012, 02:12-cr-135-DBH (ECF No. 26). (I granted the government's motion orally for a September trial date on August 24, 2012.) Worthy is entitled to make his motions, but it is incontrovertible that at least recently he has been the one

---

[15] Worthy repeatedly blames the government for the delays. For example, "[m]any of the serial indictments were brought for the express purpose of holding Mr. Worthy on charging documents the government had no intention of bringing to trial and to delay the ultimate trial, which so far has never occurred." Def.'s Supplemental Mem. In Opp'n to Mot. for Detention at 1, 02:12-cr-135-DBH (ECF No. 11). It is true that the single-clock rule of United States v. Barnes, 251 F.3d at 258-59, meant that although Worthy was arrested August 6, 2010, the 70-day clock essentially did not start to run until the arraignment of the last codefendant. All the codefendants were named in the Second Superseding Indictment filed on October 6, 2010. The last codefendant was arraigned on November 18, 2010. But during that period Worthy's individual clock ran only 22 days, as I found in my Order of Dismissal. That is the measure of the delay caused by the "serial indictments." None of the government's later indictments stopped the clock or caused delays.

[16] I concluded that the 70-day clock ran out on February 14, 2012. On February 24, the case was set for trial jury selection April 2. Worthy forestalled that trial by filing a new motion to suppress and dismiss on March 26. After briefing, I ruled on May 15, granting in part and denying in part the motions, and on May 22 Worthy was put on a trial list for jury selection July 2. Thereafter he filed a motion to substitute counsel (denied by my colleague Judge Singal in my absence) and the motion to dismiss under the 70-day clock on June 27 that forestalled the July trial.

delaying this case from proceeding to trial. Section 3164(c) speaks of failure to commence trial of a detainee "through no fault of the accused or his counsel." Although both the 70-day and the 90-day clocks already had run before Worthy's trial scheduled for July, at least since June 27 it is the "fault of the accused or his counsel" that this matter has not proceeded to trial.

Moreover, the Magistrate Judge held a new detention hearing this month, and the government offered additional evidence as to why Worthy should be detained pending trial. The evidence is compelling, and Worthy's appeal does not challenge the Magistrate Judge's factual findings. According to Magistrate Judge Rich:

> The defendant has a record of residence, both in and out of Maine, as set forth in the Pretrial Services report, that is replete with changes of residence just within the last five years prior to his detention, and an attenuated relationship with the state of Maine, where he had been only one year prior to his detention, and no evident relationship with any other jurisdiction. That nomadic existence in and of itself presents, in the court's view, a risk of flight, particularly when coupled with the substantial penalty that the defendant faces in this case.
> The defendant's employment history is similarly sketchy and provides the court with no basis on which to believe that he would have any employment-based grounding were he released. Moreover, according to the Pretrial Services report, the defendant has used a substantial number of aliases in the past, raising the specter of flight or making flight more likely; approximately 20 different aliases have been used.
> Perhaps most significantly, I noted that the defendant violated his parole on three occasions between May of 2005 and 2009 and was convicted of violating conditions of release. His criminal history includes numerous arrests and/or convictions, including for assault, possession of a controlled substance and a narcotic, forgery, rape, and domestic violence. I found that the adjudicated violations of parole are significant and indicate a propensity by this defendant not to follow court orders.

> He has not shown in the past a willingness to comply with court orders.
> The defendant has no family ties to Maine.
> Turning to the danger to others and to the community, I found that the government readily met its burden of proof by clear and convincing evidence. Even if the presumption under section 3142(e) was given only some weight, the nature of the offense is clearly a substantial danger to the community. This danger is compounded by the defendant's own admitted drug use.
>
> . . . .
>
> [T]he government has provided evidentiary justification for continuing the defendant's pretrial detention. That evidence, admitted at the August 7, 2012, detention hearing, includes letters in which the defendant talks about killing people who have indicated a willingness to testify against him and wanting to smuggle drugs into the jail in which he was being held, Government Exhs. 4-6, and evidence of his ability to obtain forged identification documents, Government Exh. 3.

Detention Order Pending Trial and Recommended Dec. on Mot. to Dismiss and for Immediate Release at 4-5, 8, 02:12-cr-135-DBH (ECF No. 27). Worthy presented no new evidence about how a release order could be crafted to protect the community and ensure his appearance for trial. Instead, his earlier motion practice reveals that the third-party custodian he once proposed is no longer available.[17]

The net result is that the government has been seeking trial beginning July 2 (actually earlier but for motions by Worthy). Worthy advanced his right to release under section 3164 only on July 18 and has resisted government

---

[17] I am not saying that the third-party custodian would have been appropriate if he were available. At the earlier detention hearing, that person testified that although he (the putative third-party custodian) was now clean, he had smoked crack cocaine two months previously. Tr. of Arraignment at 19-20, 02:10-cr-135-DBH (ECF No. 50). He also testified that he had never known Worthy to do drugs or have them. Id. at 20. Yet in closing argument at the detention hearing, Worthy's lawyer said that Worthy admitted to drug use "over the last year or so." Id. at 33.

efforts to move forward to trial. Yet he must be released despite the severe risk that he will flee[18] and his danger to the community.

**CONCLUSION**

Nevertheless, I must follow the statute as Congress has enacted it—"No detainee [who is detained solely because he is awaiting trial] shall be held in custody pending trial after the expiration of such ninety-day period required for the commencement of his trial"—and I will do so. 18 U.S.C. § 3164(c). The Magistrate Judge's detention order must be vacated and the defendant must be ordered released on account of section 3164.

Nowhere, however, does the statute, nor does Tirasso or any other case, say that the release must be without conditions. Instead, the statute says:

> Failure to commence trial of a detainee as specified in subsection (b), through no fault of the accused or his counsel, or failure to commence trial of a designated releasee as specified in subsection (b), through no fault of the attorney for the Government, *shall result in the automatic review by the court of the conditions of release.*

18 U.S.C. § 3164(c)(emphasis added). That language strongly suggests that even though Worthy must be released, conditions can be imposed.[19] Certainly stringent conditions are appropriate here, such as electronic monitoring, third-party custodianship, travel limits, or other devices. I therefore **STAY** both my order of release and my vacating of the detention order, and **REMAND** to the

---

[18] He faces a sentence of up to life because of a prior conviction for possession with the intent to sell a controlled substance. Information Charging Prior Conviction, 02:12-cr-135-DBH (ECF No. 18); 21 U.S.C. § 841(b)(1)(A); 21 U.S.C. § 841(b)(1)(B).

[19] See, e.g., United States v. Theron, 782 F.2d at 1516-17 (finding a 90-day Speedy Trial Act violation and ordering release "on bond with other appropriate conditions"). Alternatively, Theron ordered that the defendant be tried within 30 days, id., which is also what will happen in Worthy's case, with jury empanelment and trial scheduled now for September 10, 2012.

15

Magistrate Judge to consult with the Pretrial Services Office and counsel and hold any additional hearing that may be necessary, to establish conditions of release. In light of my ruling that Worthy is entitled to release, the hearing shall be expedited. With the issuance of the Magistrate Judge's Order setting conditions of release, my Order of Stay will automatically expire. This temporary stay will also permit the government to file a notice of appeal, if it chooses to do so in light of the scarcity of caselaw,[20] and to seek from the First Circuit a continued stay of release, if it so chooses.

Because of my ruling, I do not deal with the defendant's constitutional arguments for release.

**SO ORDERED.**

**DATED THIS 28TH DAY OF AUGUST, 2012**

/s/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[20] The defendant has already filed a notice of appeal of my earlier decision to dismiss without prejudice. The notice expresses some diffidence as to whether it is premature. Def. Worthy's Notice of Appeal at 2, n.1, 02:10-cr-136-DBH (ECF No. 670). But this release order may be immediately appealable by the government under 18 U.S.C. § 3731. I express no view on whether such an appeal might end up addressing the same issues, *i.e.*, Speedy Trial Act calculations under either or both of the 70-day and 90-day clock, as well as whether the earlier dismissal had to be with prejudice. (The latter ruling would moot the 90-day-clock issue.)